## INTERSTATE COMMERCE COMMISSION v. DAVIDSON.

### No. 1464.

District Court, D. Nebraska, Omaha Division.

Aug. 4, 1937.

Joseph T. Votova, U. S. Dist. Atty., of Omaha, Neb., Augustine S. Mason and Jack Garrett Scott, both of Washington, D. C., for plaintiff.

Kelso A. Morgan, of Omaha, Neb., for defendant.

DONOHOE, District Judge.

By the bill of complaint in this case, the defendant is charged with being engaged in the transportation of passengers by motor vehicles in interstate commerce for compensation; that the defendant advertised for and solicited passengers for transportation by a motor vehicle for compensation over and upon the public highways between the city of Omaha, in the state of Nebraska, and the cities of Los Angeles and San Francisco in the state of California, and the city of Portland in the state of Oregon; that the defendant has failed to comply with the provisions of the Motor Carrier Act of 1935, and particularly section 222(b) thereof, title 49 U.S.C.A. § 322(b), in that, at the time of the said solicitation and transportation of passengers, there was not in force, and there is not now in force, with respect to the defendant, a certificate of public convenience and necessity issued by the Interstate Commerce Commission, authorizing such transportation and operation, and that at said times there was not on file with the Interstate Commerce Commission, and that there is not now on file, any application by the defendant for any certificate of public convenience and necessity, and that the operations and transportation by the defendant were and are without warrant or authority at law; that the defendant did not file with the Commission any tariff showing any rate, fare, or charge, or any evidence of concurrence in or acceptance of any rate, fare, or charge

applicable, or by the defendant applied to such transportation of passengers. The prayer of the petition is for an injunction against the defendant, his agents, employees and representatives, restraining them from in any manner or by any device, directly or indirectly, transporting passengers by motor vehicle in interstate commerce over or upon the public highway for the general public for compensation, whether over regular or irregular routes, until such law has been complied with.

The defendant, by answer to the bill of complaint, in substance admits that he has not complied with the provisions of the Motor Carrier Act (15 U.S.C.A. § 77 c; 49 U.S.C.A. § 301 et seq.), but denies that he has violated the terms and provisions of said act, and in substance charges that his operations do not come within the intent or purview of such law.

The facts in the case have been agreed to by written stipulation. They may be summarized as follows: Defendant is a resident of Omaha, Neb., and is engaged in the business of buying and selling secondhand automobiles; that the automobiles are and were purchased in Omaha and vicinity; that there is a more desirable market for the sale of these secondhand automobiles in Los Angeles and San Francisco in the state of California, and Portland, in the state of Oregon, and at various other points in many other states; that, in order to avail himself of the advantages of such outside markets, the defendant finds it necessary to transport his automobiles to such places, and as a means of saving or reducing the cost of the transportation of such automobiles has devised a plan under which he has been operating, and threatens to continue to operate, by which he inserts want ads in the Omaha daily papers, soliciting passengers for transportation, of which the following are samples:

"Have new sedans to be delivered by reliable parties to Los Angeles. You pay only gas expenses. Warren Davidson, 2026 Farnam, Omaha."

"Will furnish transportation to California or Oregon in exchange for carpenter work. Ke 5496."

"Cars leaving all week for Portland and Seattle. Share expense basis. Sagner, 2026 Farnam, Ha 1488."

"Leaving for Portland and Los Angeles; late model car; share expenses. At 4617, 2060 Farnam."

"Dealer driving to Portland, Ore., Tuesday; new sedan; room for two; share expense. Ha 1488."

"Dealer wants careful driver, good references, to drive new Oldsmobile Sedan to San Francisco; share small expense; also three passengers. Warren Davidson, 2026 Farnam, Ha 1488."

"Dealer sending new car to San Francisco. Will take 3 to share expense. Warren Davidson Motor Sales, 2026 Farnam, Ha 1488."

"New cars leaving for California and Oregon. Need reliable drivers and passengers; small expense. Warren Davidson, 2026 Farnam, Ha 1488."

When parties appeared in response to this invitation, agreements were made with them whereby such persons agreed to deliver automobiles for the defendant at certain designated points, among which were Los Angeles and San Francisco, in the state of California and Portland, in the state of Oregon, and various other points in many other states. At the time of entering into the agreement, the person or persons intending to ride in the car that was to be delivered paid over to the defendant certain sums of money equal to the estimated expense for the purchase of gas and oil consumed on the journey. In other cases, when such sums of money were not paid to the defendant, the person or persons driving the automobile paid for the gas and oil, after it was delivered to them, at the filling stations on the route, and in such cases no money was paid to the defendant. In other cases, where insufficient amounts were paid to the defendant to pay the transportation expenses of an automobile, the defendant personally paid and supplied the balance necessary to defray the expenses for the purchase of the gas and oil. On other occasions, the defendant or the employee of the defendant drove an automobile for delivery in states other than the state of Nebraska, and in such cases the estimated sum of money necessary to buy the gas and oil to supply the automobile on the trip was paid to the defendant, or his employee, and was used by the defendant or his employee to defray the transportation expenses of the trip. The passengers in the vehicle were given the privilege of stopping at

834

intermediate towns, and to choose any route to arrive at their destination. The departure of the cars was not fixed as of any schedule; and no definite or fixed charges were made, except the sum of money mentioned for the payment of transportation expenses. Prior to the 6th of April, 1937, if the defendant or some one in his employ did not drive, then the automobile was delivered to the party or parties desiring to go to a particular destination, and in consideration thereof such party or parties would buy the gas and oil necessary for the journey. Since the riders or passengers were generally strangers to one another, each individual's share of the cost was paid to the defendant after the car was delivered to the designated point. Generally an accounting was made by the parties riding in the automobile, and, if the estimated cost originally paid to the defendant was greater than the actual cost of transportation expenses, the same was refunded to the riders in the automobile by the dealer to whom the automobile was delivered. The title to the car remained in the name of the defendant at all times until it was sold on the designated market. Defendant, when selecting his passengers, chose them with care, since he was entrusting his cars with them. Before delivering a car to any person or persons, a careful investigation was made as to their character, and in certain cases a driver of the car was given a reduced share of the expenses as compared with that paid by the other passengers; that the purpose of the entire matter was that the defendant was seeking the cheapest possible method of delivering his secondhand cars to various dealers in the states so mentioned; that on no occasion was there more than six persons who rode in any car; that no regular routes were ever established or maintained; that the group to which his car was entrusted chose its own route to reach its destination; that the business of the defendant, among other things, was to keep in touch with the varying markets for used cars in different communities, and that the plan used by him was a convenience with which to avail himself of favorable conditions in distant markets, and that the defendant did not furnish any means or method of returning to any of the persons to whom he entrusted his cars, but that many persons did return by other means of transportation. It is further stipulated that a demand was made upon the defendant to refrain from his practice, and discontinue his method of carrying on his business, and that the defendant refused, and now refuses, unless restrained by the court.

To recapitulate—the defendant had a number of secondhand cars which he desired to have transported to California and Oregon. There were three means of transportation available. He might ship the cars by railroad. He might ship them by truck. In either case, the freight or transportation would be based on mileage. Lastly, he might cause the cars to be moved by their own power. This latter means would necessitate the cost or expense of competent drivers, gas and oil, and the necessary cost due to wear and breakage. He chose the latter means, but, in order to offset or reduce the expense, he engaged in the business of transporting passengers. who were desirous of or seeking transportation to the states mentioned, and, in order to secure such passengers, he solicited the business of the general public in the newspapers. True, he exercised the right of selecting the most desirable of the applicants. When the transactions were completed, his cars were transported at an expense to him of the wear and breakage, and in some instances the expense of the driver. In all cases, passengers paid for their transportation in the cost of the gas and oil.

As we view it, it does not matter how the cost of transportation was arrived at, so long as a consideration was paid to and received by the defendant for the transportation. The defendant contends that the business would not constitute the defendant a common carrier within the meaning of the Motor Carrier Act, and in support of his contention has cited a number of cases from state jurisdictions defining the term "common carrier" as applied to the laws of such states. These decisions we do not consider helpful, because the Motor Carrier Act (49 U.S.C.A. § 303(a) (14) specifically defines the term "common carrier" as follows: "The term 'common carrier by motor vehicle' means any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public in interstate or foreign commerce, by motor vehicle for compensation, whether over regular or irregular routes, including such motor vehicle operations of carriers by rail or water, and of express

or forwarding companies, except to the extent that these operations are subject to the provisions of chapter 1 of this title."

The language of this definition is plain and simple, and the holdings of state courts in cases involving an entirely different law is of no assistance to us in determining the plain meaning of this definition.

The transactions in which the defendant has indulged we think contains all of the elements specified in the definition. By his arrangement, he undertook to transport passengers, for the general public, in interstate commerce, by motor vehicle, for compensation. Since we find all of these enumerated elements present in the stipulation of facts, we must hold that the defendant was and is a common carrier by motor vehicle, as defined in the Motor Carrier Act; that he has violated the terms of the act, and proposes to continue such violation. In addition to the defenses above enumerated, the defendant challenges the constitutionality of the act. The power of Congress to enact such regulatory laws has been upheld so many times that we do not deem it necessary or profitable to enter into a discussion of this subject here.

An injunction will therefore be granted as prayed for in the bill of complaint. Exceptions will be allowed if duly taken by the defendant. Counsel for the plaintiff will prepare findings of fact and conclusions of law in keeping with this memorandum.